G. E. MOTSINGER v. W. D. PERRYMAN AND ASSOCIATED INDEMNITY CORPORATION.

(Filed 19 June, 1940.)

1. **Master and Servant § 45c—Cancellation of policy depends upon receipt of notice and not the reading and ascertainment of effect thereof.**

   The compensation insurance policy in suit provided that the policy might be canceled at any time upon written notice stating when, not less than ten days thereafter, cancellation should be effective. *Held:* Under the terms of the policy, cancellation is dependent upon the receipt of the notice and not upon whether insured reads the notice and ascertains its contents and effect, and tender of unearned premiums is not essential to cancellation, and upon evidence tending to show that insured received notice of cancellation and that the injury in suit occurred over three months thereafter, the holding of the Industrial Commission that the policy was not canceled as to insured is error.

2. **Contracts § 8—**

   General laws of the State in force at the time of the execution and performance of a contract enter into and form a part of it as though they were referred to or incorporated in its terms.

3. **Constitutional Law § 4c—**

   The making of law is a function of the Legislature which it may not delegate, and while it may grant administrative boards and commissions power within definite, valid limits, to promulgate rules and regulations for the administration of a law or to determine the existence of facts upon which a legislative declaration of policy is to apply, such rules and regulations adopted by administrative agencies do not have the effect of substantive law.

4. **Contracts § 8—**

   Rules promulgated by an administrative agency do not constitute part of the law of the State within the meaning of the rule that the laws

of the State in existence at the time become a part of the contract as though referred to or incorporated therein.

**5. Master and Servant §§ 45c, 52a—Rule of Industrial Commission requiring notice to it of cancellation of policy does not become a part of the policy contract.**

The compensation insurance policy in suit provided that any State law requiring notice of cancellation should become a part of the contract and that it was subject to the North Carolina Compensation Act. At the time the policy was issued, a rule of the Industrial Commission was in effect requiring ten days notice to the Commission of cancellation. The evidence disclosed that notice of cancellation in accordance with the terms of the policy was sent to and received by insured but that no notice of cancellation was given the Industrial Commission, and that the injury in suit occurred some three and one-half months after notice of cancellation had been received by insured. *Held:* The administrative rule of the Industrial Commission is not substantive law, and does not come within the rule that a contract will be construed with reference to laws in existence at the time of its execution, and the holding of the Industrial Commission that as to the injured employee the policy had not been canceled because of want of notice to the Industrial Commission, is error.

**6. Master and Servant § 45c—**

A rule of the North Carolina Rating Bureau requiring notice to it of cancellation of a compensation insurance policy does not affect the contractual rights of the parties, the bureau being merely an organization or association of insurance companies and not a State agency.

CLARKSON, J., dissenting.

SCHENCK, J., concurs in dissent.

APPEAL by defendant Associated Indemnity Corporation from *Warlick, J.,* at February Term, 1940, of FORSYTH. Reversed.

Claim for compensation under the Workmen's Compensation Act prosecuted by plaintiff, the injured employee.

Plaintiff and defendant employer are both bound by the Workmen's Compensation Act. The defendant Associated Indemnity Corporation is the alleged insurance carrier for the employer.

On 9 October, 1937, plaintiff suffered an accident which arose out of and in the course of his employment which resulted in a complete loss of the sight of his left eye. The hearing Commissioner awarded compensation. On appeal to the Full Commission the award was affirmed. On appeal to the Superior Court the award of the Full Commission was likewise affirmed.

The defendant employer makes no contention that the plaintiff is not entitled to compensation and did not appeal from the award. The controversy is as to the liability of the alleged insurance carrier. On this controversy the following facts appear:

Some time prior to 1 June, 1937, the defendant Perryman applied to The Phoenix Company, insurance agency and broker, for a policy of

compensation insurance. The Phoenix Company in turn applied to Baylor Insurance Service of Durham, which was a State agency for the Associated Indemnity Corporation of San Francisco, California. As a consequence of said negotiation the Associated Indemnity Corporation issued its compensation policy to W. D. Perryman bearing date 1 June, 1937.

The defendant Perryman, upon receipt of the policy, issued his two checks to G. L. Zimmerman, representative of The Phoenix Company, in an amount equal to the advance premiums for the period of 6 months for which the policy was issued. Thereafter, on or about 15 June, 1937, the Associated Indemnity Corporation sent to W. D. Perryman by registered letter notice of cancellation of the policy. This registered letter was received by Perryman. No notice of cancellation was mailed to or served on the Industrial Commission or on the North Carolina Rating Bureau.

Zimmerman, representative of The Phoenix Company, never accounted for the premium received, either to Baylor Insurance Service or to the defendant Indemnity Corporation. After the injury to plaintiff, he repaid to the defendant Perryman an amount equal to the premium received to be applied on claims arising out of the injury for hospital expenses, etc. Subsequent to the injury the defendant insurance carrier was paid the amount due as earned premium to the date of the cancellation.

The individual Commissioner concluded that the policy was still in full force and effect and granted an award against the corporate defendant. This conclusion and award was affirmed both by the Full Commission and by the Superior Court. From judgment of the Superior Court affirming the award of the Full Commission the defendant Associated Indemnity Corporation appealed.

*J. F. Motsinger and E. M. Whitman for plaintiff, appellee.*
*Henry Bane, Fred S. Hutchins, and H. Bryce Parker for defendant Associated Indemnity Corporation, appellant.*

BARNHILL, J. It was admitted here that the defendant Perryman is solvent and able to pay the award made so that the rights of the plaintiff are not endangered by the controversy presented which is, as found by the Commission, primarily between the defendant Perryman and the defendant Associated Indemnity Corporation. This controversy is to be determined by the answers to two questions: (1) Was the policy canceled as between the employer and the insurance carrier? and (2) If so, was such cancellation effective as against the rights of the plaintiff employee?

If the policy was not canceled the insurance carrier is liable both as to the employer and as to the employee. If the policy was canceled as to the employer but not as to the employee, then the plaintiff may have recourse against the insurance carrier as well as against his employer for the collection of his award.

The Commission found that "on or about 15 June, 1937, the Associated Indemnity Corporation attempted to cancel their policy No. P. 10206 issued to W. D. Perryman June 1, 1937, upon which the premium was paid for a period of six months, by addressing a registered letter to said W. D. Perryman at his last known address; and, the Commissioner finds as a fact that said letter was received by W. D. Perryman but was misplaced by him before ever being read by him and before he ever ascertained the contents thereof, and he did not know that the Associated Indemnity Corporation had attempted to cancel said policy. The Commissioner further finds that W. D. Perryman, the insured, never at any time prior to the alleged injury in this case or thereafter agreed or consented to the cancellation of the policy of compensation insurance offered in evidence in this case." As to this the defendant Perryman testified: "I received a registered letter from the Associated Indemnity Corporation through Baylor's Insurance Service, Inc., one evening when I got home and I opened it and it said something about an insurance policy, and I had promised to be at Thomasville Orphanage at 7:30 and I stuck it in my pocket and I have never seen it since. I said to myself, Mr. Zimmerman will let me know if there is anything wrong." He further testified that his daughter received the letter at his office and that she turned the notice over to him and that he received it on the same day it arrived at the office. He likewise testified that he never filed any notice of the accident with the insurance carrier or with the Industrial Commission and that Zimmerman always handled his insurance and represented him in all of these transactions as his agent.

The cancellation of the policy under the terms thereof as to the defendant employer is dependent upon receipt of the notice and not upon whether he read the notice, ascertained its contents and knew that it was a cancellation. In holding to the contrary the individual Commissioner and the Industrial Commission relied upon *Pettit v. Trailer Co.,* 214 N. C., 335, 199 S. E., 279. This decision does not sustain the position assumed by the Commission. That case merely held that the 10-day period began to run from the date of the receipt and not from the date of mailing the notice.

The policy in question provides that "this policy may be canceled at any time by either of the parties upon written notice to the other party stating when, not less than 10 days thereafter, cancellation shall be effective. The effective date of such cancellation shall then be the end

of the Policy Period." Under the express terms of the contract written notice is the condition upon which the policy may be canceled. *Mfg. Co. v. Assurance Co.,* 161 N. C., 88, 76 S. E., 865; *Sherrod v. Insurance Assn.,* 139 N. C., 167, 32 C. J., 1249. That the recipient of the notice shall read and ascertain the contents thereof is not a condition precedent to cancellation. It was error for the Commission to so hold.

The notice was in accord with the terms of the contract. A tender of the unearned premiums was not essential. .This identical question is discussed and so decided in *Hughes v. Lewis,* 203 N. C., 775, 166 S. E., 909.

But it is contended that even if the policy was canceled as against the employer it was not canceled as against the employee. This contention is bottomed upon a provision in the policy and a rule adopted by the Industrial Commission.

The policy provides in part that "the law of any State, in which this policy applies, which requires that notice of cancellation shall be given to any Board, Commission or other State agency is hereby made a part of this Policy and cancellation in such state shall not be effective except in compliance with such law." It is provided further by rider attached :

"The obligations of Paragraph One (a) of the Policy to which this Endorsement is attached include such Workmen's Compensation Laws as are herein cited and described and none other.

"Chapter 120, Laws of 1929, State of North Carolina, known and cited as the North Carolina Workmen's Compensation Act, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Policy is in force."

The rule adopted by the Industrial Commission, relied upon by appellee, is as follows: "Any insurance carrier having issued a policy to an employer and desiring to cancel same shall be required to give ten days prior notice thereof to the Industrial Commission at its office in the city of Raleigh. Cancellation of policies shall give cause and be reported promptly to the Commission."

Is the rule thus adopted by the Industrial Commission a part of the law of the State within the meaning of the provision in the policy and the prevailing rule of construction which writes the law of the State into the contract so that there could be no cancellation thereof without ten days prior notice to the Industrial Commission? The Commission so held. We reluctantly conclude that in this there was error.

It is well established that the general laws of a state in force at the time of the execution and performance of a contract become a part thereof and enter into and form a part of it, as if they were referred to or incorporated in its terms. *Hood v. Simpson,* 206 N. C., 748, 175 S. E., 193, and cases cited; *Headen v. Ins. Co.,* 206 N. C., 270, 176 S. E.,

568; *Abernethy v. Ins. Co.*, 213 N. C., 23, 195 S. E., 30; *Bank v. Bryson City*, 213 N. C., 165, 195 S. E., 398, and cases cited; 17 C. J. S., 782, sec. 330. This principle embraces laws which affect its validity, construction, discharge and enforcement. *Von Hoffman v. City of Quincy*, 4 Wall, 535, 18 L. Ed., 403.

Since under the doctrine of the separation of the powers of government the lawmaking function is assigned exclusively to the Legislature, it is a cardinal principle of representative government that except when authorized by the Constitution—as may be the case in reference to municipal corporations—the Legislature cannot delegate the power to make laws to any other authority or body. 11 Am. Jur., p. 921, sec. 214. Except where expressly directed or permitted by the Constitution, it is a doctrine well established and frequently reiterated by the courts that the functions of the Legislature, strictly and exclusively legislative, such as making the law, must be exercised by it alone and cannot be delegated. 16 C. J. S., p. 337, sec. 133; *Provision Co. v. Daves*, 190 N. C., 7, 128 S. E., 593; *Meador v. Thomas*, 205 N. C., 142, 170 S. E., 110.

However, any power not legislative in character which the Legislature may exercise, it may delegate. While the Legislature may not delegate the exercise of its discretion as to what the law shall be, it may confer discretion in the administration of the law. 16 C. J. S., p. 339, sec. 133; *Provision Co. v. Daves, supra.*

The authority to make rules and regulations to carry out an express legislative purpose or to effect the operation and enforcement of a law is not an exclusively legislative power, but is rather administrative in its nature and may be delegated. An administrative commission, within definite valid limits, may be authorized to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. So long as a policy is laid down and a standard is established by a statute, no unconstitutional delegation of legislative power is involved in leaving to selected instrumentalities both the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply. 11 Am. Jur., p. 955, *et seq.;* 11 Am. Jur., p. 960, sec. 242. However, boards and commissions of this character having authority to adopt rules and regulations do not exercise any of the powers delegated to the Legislature. They do not make laws. 11 Am. Jur., 961, sec. 242; *Provision Co. v. Daves, supra,* and cases cited.

The authority granted is to "fill in the details" in respect to procedural and administrative matters. Such board may not adopt a rule under such delegated authority which has the effect of substantive law. Neither urgency of necessity nor gravity of situation arising from economic or social conditions allows the Legislature to abdicate, transfer or to dele-

gate its constitutional authority or duty to another branch of government. *Holgate Bros. Co. v. Bashoe,* 331 Pas., 255, 200 Atl., 672, 117 A. L. R., 639.

Thus it appears that the quoted rule adopted by the Industrial Commission under the provisions of ch. 120, sec. 54, Public Laws 1929, authorizing the Commission to make rules, not inconsistent with the act, for carrying out the provisions of the act and providing that processes and procedure under the act shall be as summary and simple as reasonably may be, must be held to relate to administrative and procedural matters and cannot be given the force and effect of law within the rule that general laws of a state enter into and form a part of a contract. *Provision Co. v. Daves, supra; Kildow v. Industrial Comr.,* 192 N. E., 873 (Ohio); *Bailey v. Indemnity Ins. Co.,* 145 S. W. (2d), 798.

The only case directly in point we have found is that of *Zurich General Accident & L. Ins. Co. v. Industrial Comr.,* 325 Ill., 452, 156 N. E., 307. In that case it is made to appear that the Industrial Commission of the State of Illinois under authority of the provision in the statute creating the Commission which vested the Commission with power to adopt rules "for carrying out the duties imposed" adopted a rule as follows: "No insurance policy shall be terminated either by cancellation or expiration without ten (10) days' notice being given to the Commission and the liability of the insurer thereunder shall not cease until the expiration of such ten (10) days." In discussing the subject it is there said: "The power conferred is not general in its scope but is limited to the making of rules for the performance of the duties imposed upon the Commission by law. Such rules necessarily relate to matters of procedure. The act itself prescribes the conditions under which the compensation shall be paid. Rule 28 required 10 days notice of the termination of liability upon an insurance policy. Liability upon such a policy may have ceased to exist at the time notice to the effect was given, yet the rule extends that liability for an additional period of 10 days. The rule is not confined to the matter of procedure, but exceeds the authority conferred upon the Commission and creates a liability on the part of the insurer where none may exist in fact. The Commission cannot create a liability where the law creates none. *Morris & Co. v. Industrial Comr.,* 295 Ill., 49, 128 N. E., 727. It was not intended to extend the substantive provisions of the Workmen's Compensation Act by rules which the Commission might adopt, nor could such provisions be so extended. The power to enact laws is vested in the General Assembly and is a sovereign power, requiring the exercise of judgment and discretion, and cannot be delegated. 1 Lewis' Sutherland on Stat. Const. (2d), sec. 89; Cooley's Const. Lim. (7d), p. 163."

*Bethlehem Shipbuilding Corp. v. Mullens,* 119 Atl., 314 (Del.), is not authoritative. There the Court was considering a rule which required the notice of injury to be in writing. This rule was adopted under statutory authority and the requirement of notice is stipulated in the statute. The rule merely prescribes the form of the notice and is in accord with other provisions of the statute requiring written notice. Nor is the statement in 71 C. J., 914, quoted in the appellee's brief, in point. There the text writer is discussing the right of cancellation and the duty to give notice to the Commission in jurisdictions in which the compensation act itself provides a method for cancellation of Workmen's Compensation insurance.

The North Carolina Rating Bureau is an organization or association of insurance companies. It is not a State agency. Even if it has a rule requiring notice to it of the cancellation of a policy, such rule has no bearing on the questions here presented. A failure to notify this bureau of the cancellation does not have the effect of continuing the policy in force beyond the 10 days after notice to the insured. .

Technically, the contract of insurance is between the employer and the insurance carrier. However, the policy is issued for the protection of the employee and it is the duty of the Industrial Commission to have the employer provide adequate security for the payment of awards. It is, therefore, of vital concern, both to the Industrial Commission and to the employee, that the Industrial Commission be advised of the cancellation of a policy issued pursuant to the terms of this statute. The need for a statutory requirement of such notice as a condition precedent to cancellation may well merit the attention of the Legislature.

For the reasons herein pointed out it was error for the court below to affirm the conclusions of the Industrial Commission in the respects indicated. The policy issued by the defendant Indemnity Corporation was duly canceled prior to the date of the injury sustained by the plaintiff. It is not liable for the payment of the award made.

Reversed.

CLARKSON, J., dissenting: I think the judgment of the court below should be sustained. It may seem trite to refer to the major purpose involved in the adoption of workmen's compensation acts. The facts in this case are such, however, that we deem it proper to discuss this purpose. At common law an injured employee was so often defeated in his efforts to recover damages growing out of injuries arising out of and in the course of his employment by the interposition of various defenses, such as contributory negligence, negligence of fellow servants, lack of negligence on the part of the employer, etc., that it was deemed to be in the interest of justice and the public welfare to give the employee

compensation for injuries sustained in the course of his employment irrespective of the various and sundry defenses which had previously been recognized. Negligence was eliminated as a defense. Workmen's compensation acts were, therefore, adopted to afford employee a certain, specific and swift mode of relief for occupational injuries. Thus we believe that the welfare of employees was the primary concern of legislative bodies enacting legislation of this type, but there has crept up in this beneficent act technicalities and refinements that are tending to nullify it. The present case is an example.

In order to best effectuate the purpose of the Workmen's Compensation Act in the State of North Carolina, means were provided for the creation of a body known as the North Carolina Industrial Commission, it being made the duty and responsibility of the said Industrial Commission to enforce the terms and provisions of the said Workmen's Compensation Act. The Industrial Commission was given broad power to formulate rules and regulations for the protection of all employees coming within the purview of this act. N. C. Code, 1939 (Michie), sec. 8081 (jjj), subsection (a), in part, is as follows: "The Commission may make rules, not inconsistent with this article, for carrying out the provisions of this article. Processes and procedure under this article shall be summary and simple as reasonably may be."

It has been held that the rules of Industrial Commissions have the force and effect of law. *Bethlehem, etc., Corp. v. Mullen* (Del.), 119 A., 314.

The North Carolina Industrial Commission under the authority vested in it by the Workmen's Compensation Act passed a rule which is known as Rule 4, said rule being as follows: "Any insurance carrier having issued a policy to an employer and desiring to cancel same shall be required to give ten days prior notice thereof to the Industrial Commission at its office in the city of Raleigh. Cancellation of policies shall give cause and be reported promptly to the Commission."

The reason for the adoption of rules such as Rule 4 hereinbefore quoted is well stated in Corpus Juris, as follows: "A provision that any termination of the insurance policy shall not be effective as far as the employees of insured are concerned until a specified number of days after notice thereof is received by the board or commission has for its purpose to provide a period of time within which the board or commission and the employer may see that new insurance is provided in place of the canceled insurance, and an insurer who fails to file notice of the cancellation of the policy, as required by statute, is bound to pay the compensation due an injured employee, where no other insurer has become liable therefor, . . ." Workmen's Compensation Act, 71 C. J., at p. 914.

There is a provision in the policy of insurance involved in this case which reads as follows: *"The law of any state, in which this policy applies, which requires that notice of cancellation shall be given to any board, commission or other state agency is hereby made a part of this policy and cancellation in such state shall not be effective except in compliance with such law."*

Rule 4 of the Industrial Commission was in existence at the time this policy was issued, and therefore became, in effect, a part of the policy. It has been the policy of this State and every other state, so far as we know, to vest in boards and commissions certain powers and duties with regard to insurance business, and insurance companies have been required to comply with reasonable requirements made by said boards and commissions. As a matter of fact, the insurer in this case had actual knowledge of Rule 4 of the Industrial Commission, but thought that its agent would give notice to the Commission. The agent thought that the insurance company would give notice to the Commission. Since they were relying on each other, neither of them gave notice.

This case has been before three tribunals, namely, the trial Commissioner, the Full Commission and the Superior Court. The examination of Mrs. S. B. Clark and the statements made by the court and by Mr. Bane as shown in the record indicate that Rule 4 was under discussion.

We are of the opinion that the Industrial Commission, as well as other trial bodies, have a right to take cognizance of its own rules in hearings before it. Whether this is true or not we believe that the Supreme Court has the right to take judicial notice of the rules of the Industrial Commission. *Comrs. v. Steamship Co.,* 128 N. C., 558; *Staton v. R. R.,* 144 N. C., 135.

In the case of *Pettit v. Trailer Co.,* 214 N. C., 335, the insurer gave notice to the insured, the Industrial Commission and the Rating Bureau. The Rating Bureau received the notice of a sufficient length of time prior to the accident, but neither the insured nor the Industrial Commission received the notice in time to effect a cancellation of the policy prior to the accident. The Supreme Court held that since sufficient notice was given the insured, it was not "necessary to determine whether notice to the North Carolina Rating Bureau by compensation carrier that it is canceling a compensation policy is notice to the Industrial Commission." We infer from this decision that the Supreme Court regards notice to the Industrial Commission as being necessary. It should be noted that Rule 4 was in effect on 23 November, 1936, when the insurer attempted to give notice of cancellation to the insured in the *Pettit case, supra,* and this was done more than six months prior to the attempted cancellation of the policy involved in the case at bar.

The case of *Zurich, etc., Co. v. Industrial Commission* (Ill.), 156 N. E., 307, involves a different state of facts from the case now under consideration. In the *Zurich case, supra,* the insurer sent a notice to the Industrial Commission stating that the insurer was issuing a policy of insurance, but as a matter of fact no such policy was ever issued or delivered. In other words, there was no contract of insurance involved. The Court held that the Industrial Commission could not create a contract where none existed. *On the other hand, in the case under consideration, the policy of insurance was issued and the premium paid for a period of six months. The Industrial Commission did not attempt to create a contract; the parties had made the contract, and the rule of the Industrial Commission became a part of the contract in accordance with its terms.*

Rule 4 is really procedural in nature when applied to the facts of this case. The parties had entered into a contract, and in the contract provided that notice required by law to be given to any board or commission would have to be given before the policy could be canceled. At that time Rule 4 was in existence which required that notice be given to the Industrial Commission prior to cancellation. The Industrial Commission was saying to the insurer that if it desired to cancel the policy after it went into effect, it must proceed in a certain manner to do so.

The plaintiff, appellee, is entitled to protection. He paid the premium. He doubtless thought that he was fully protected by insurance issued under and in accordance with the terms of the Workmen's Compensation Act. If the appellant had notified the Industrial Commission of its intention to cancel the policy, the Commission would have immediately demanded that the employer furnish a new policy or give adequate security for the protection of his employees. The failure of the appellant to give the Industrial Commission such notice, therefore, resulted in the loss of plaintiff's protection, unless appellant is held liable. The appellee was entirely innocent, but the appellant was negligent in failing to give proper notice to the Industrial Commission.

The N. C. Rating Bureau has nothing to do with the facts in this case. The contention by plaintiff is that under legislative authority as before set forth, the Commission may make rules. It has done so, as follows: "Any insurance carrier having issued a policy to an employer shall be required to give ten days prior notice thereof to the Industrial Commission," etc. The language in the carrier's policy in this case says: "The law of any state, in which this policy applies, which requires that notice of cancellation shall be given to any board, commission or other state agency is hereby made a part of this policy and cancellation in such state shall not be effective except in compliance with such law."

. The carrier had actual notice of this rule in existence when the policy was issued. It is well settled that this entered into and became a part of the carrier's contract. The premium was paid to the carrier. It is further well settled that the insurance carrier usually draws the policy contracts and a liberal construction is put on same in favor of the insured.

If the appellant had not been negligent and careless as hereinabove mentioned, the insured would doubtless have procured an insurance policy elsewhere and the employee would have been amply protected by other insurance. The appellee is entirely innocent.

The Legislature has spoken, the Industrial Commission has acted, and the defendant Indemnity Company had notice of the ten-day provision. The carrier's policy contract should be held valid.

SCHENCK, J., concurs in dissent.