CLARKSON, J., dissenting.
SCHENCK, J., concurs in dissent.
Claim for compensation under the Workmen's Compensation Act prosecuted by plaintiff, the injured employee.
Plaintiff and defendant employer are both bound by the Workmen's Compensation Act. The defendant Associated Indemnity Corporation is the alleged insurance carrier for the employer.
On 9 October, 1937, plaintiff suffered an accident which arose out of and in the course of his employment which resulted in a complete loss of the sight of his left eye. The hearing Commissioner awarded compensation. On appeal to the Full Commission the award was affirmed. On appeal to the Superior Court the award of the Full Commission was likewise affirmed.
The defendant employer makes no contention that the plaintiff is not entitled to compensation and did not appeal from the award. The controversy is as to the liability of the alleged insurance carrier. On this controversy the following facts appear:
Some time prior to 1 June, 1937, the defendant Perryman applied to The Phoenix Company, insurance agency and broker, for a policy of *Page 17 
compensation insurance. The Phoenix Company in turn applied to Baylor Insurance Service of Durham, which was a State agency for the Associated Indemnity Corporation of San Francisco, California. As a consequence of said negotiation the Associated Indemnity Corporation issued its compensation policy to W. D. Perryman bearing date 1 June, 1937.
The defendant Perryman, upon receipt of the policy, issued his two checks to G. L. Zimmerman, representative of the Phoenix Company, in an amount equal to the advance premiums for the period of 6 months for which the policy was issued. Thereafter, on or about 15 June, 1937, the Associated Indemnity Corporation sent to W. D. Perryman by registered letter notice of cancellation of the policy. This registered letter was received by Perryman. No notice of cancellation was mailed to or served on the Industrial Commission or on the North Carolina Rating Bureau.
Zimmerman, representative of The Phoenix Company, never accounted for the premium received, either to Baylor Insurance Service or to the defendant to Indemnity Corporation. After the injury to plaintiff, he repaid to the defendant Perryman an amount equal to the premium received to be applied on claims arising out of the injury for hospital expenses, etc., Subsequent to the injury the defendant insurance carrier was paid the amount due as earned premium to the date of the cancellation.
The individual Commissioner concluded that the policy was still in full force and effect and granted an award against the corporate defendant. This conclusion and award was affirmed both by the Full Commission and by the Superior Court. From judgment of the Superior Court affirming the award of the Full Commission the defendant Associated Indemnity Corporation appealed.
It was admitted here that the defendant Perryman is solvent and able to pay the award made so that the rights of the plaintiff are not endangered by the controversy presented which is, as found by the Commission, primarily between the defendant Perryman and the defendant Associated Indemnity Corporation. This controversy is to be determined by the answers to two questions: (1) Was the policy canceled as between the employer and the insurance carrier? and (2) If so, was such cancellation effective as against the rights of the plaintiff employee? *Page 18 
If the policy was not canceled the insurance carrier is liable both as to the employer and as to the employee. If the policy was canceled as to the employer but not as to the employee, then the plaintiff may have recourse against the insurance carrier as well as against his employer for the collection of his award.
The Commission found that "on or about 15 June, 1937, the Associate Indemnity Corporation attempted to cancel their policy No. P. 10206 issued to W. D. Perryman June, 1, 1937, upon which the premium was paid for a period of six months, by addressing a registered letter to said W. D. Perryman at his last known address; and, the Commissioner finds as a fact that said letter was received by W. D. Perryman but was misplaced by him before every being read by him and before he ever ascertained the contents thereof, and he did not know that the Associated Indemnity Corporation had attempted to cancel said policy. The Commissioner further finds that W. D. Perryman, the insured, never at any time prior to the alleged injury in this case or thereafter agreed or consented to the cancellation of the policy of compensation insurance offered in evidence in this case." As to this the defendant Perryman testified: "I received a registered letter from the Associated Indemnity Corporation through Baylor's Insurance Service, Inc., one evening when I got home and I opened it and it said something about an insurance policy, and I had promised to be at Thomasville Orphanage at 7:30 and I stuck it in my pocket and I have never seen it since. I said to myself, Mr. Zimmerman will let me know if there is anything wrong." He further testified that his daughter received the letter at his office and that she turned the notice over to him and that he received it on the same day it arrived at the office. He likewise testified that he never filed any notice of the accident with the insurance carrier or with the Industrial Commission and that Zimmerman always handled his insurance and represented him in all of these transactions as his agent.
The cancellation of the policy under the terms thereof as to the defendant employer is dependent upon receipt of the notice and not upon whether he read the notice, ascertained its contents and knew that it was a cancellation. In holding to the contrary the Individual Commissioner and the Industrial Commission relied upon Pettit v. Trailer Co., 214 N.C. 335,199 S.E. 279. This decision does not sustain the position assumed by the Commission. That case merely held that the 10-day period began to run from the date of the receipt and not from the date of mailing the notice.
The policy in question provides that "this policy may be canceled at any time by either of the parties upon written notice to the other party stating when, not less than 10 days thereafter, cancellation shall be effective. The effective date of such cancellation shall then be the end *Page 19 
of the Policy Period." Under the express terms of the contract written notice is the condition upon which the policy may be canceled. Mfg. Co. v.Assurance Co., 161 N.C. 88, 76 S.E. 865; Sherrod v. Insurance Assn.,139 N.C. 167, 32 C. J., 1249. That the recipient of the notice shall read and ascertain the contents thereof is not a condition precedent to cancellation. It was error for the Commission to so hold.
The notice was in accord with the terms of the contract. A tender of the unearned premiums was not essential. This identical question is discussed and so decided in Hughes v. Lewis, 203 N.C. 775, 166 S.E. 909.
But it is contended that even if the policy was canceled as against the employer it was not canceled as against the employee. This contention is bottomed upon a provision in the policy and a rule adopted by the Industrial Commission.
The policy provides in part that "the law of any State, in which this policy applies, which requires that notice of cancellation shall be given to any Board, Commission or other State agency is hereby made a part of this Policy and cancellation in such state shall not be effective except in compliance with such law." It is provided further by rider attached:
"The obligations of Paragraph One (a) of the Policy to which this Endorsement is attached include such Workmen's Compensation Laws as are herein cited and described and none other.
"Chapter 120, Laws of 1929, State of North Carolina, known and cited as the North Carolina Workmen's Compensation Act, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Policy is in force."
The rule adopted by the Industrial Commission, relied upon by appellee, is as follows: "Any insurance carrier having issued a policy to an employer and desiring to cancel same shall be required to give ten days prior notice thereof to the Industrial Commission at its office in the city of Raleigh. Cancellation of policies shall give cause and be reported promptly to the Commission."
Is the rule thus adopted by the Industrial Commission a part of the law of the State within the meaning of the provision in the policy and the prevailing rule of construction which writes the law of the State into the contract so that there could be no cancellation thereof without ten days prior notice to the Industrial Commission? The Commission so held. We reluctantly conclude that in this there was error.
It is well established that the general laws of a state in force at the time of the execution and performance of a contract become a part thereof and enter into and form a part of it, as if they were referred to or incorporated in its terms. Hood v. Simpson, 206 N.C. 748, 175 S.E. 193, and cases cited; Headen v. Ins. Co., 206 N.C. 270, 176 S.E. 568 *Page 20 
; Abernethy v. Ins. Co., 213 N.C. 23, 195 S.E. 30; Bank v. BrysonCity, 213 N.C. 165, 195 S.E. 398, and cases cited; 17 C.J.S., 782, sec. 330. This principle embraces laws which affect its validity, construction, discharge and enforcement. Von Hoffman v. City of Quincy, 4 Wall, 535, 18 L.Ed., 403.
Since under the doctrine of the separation of the powers of government the lawmaking function is assigned exclusively to the Legislature, it is a cardinal principle of representative government that except when authorized by the Constitution — as may be the case in reference to municipal corporations — the Legislature cannot delegate the power to make laws to any other authority or body. 11 Am. Jur., p. 921, sec. 214. Except where expressly directed or permitted by the Constitution, it is a doctrine well established and frequently reiterated by the courts that the functions of the Legislature, strictly and exclusively legislative, such as making the law, must be exercised by it alone and cannot be delegated. 16 C.J.S., p. 337, sec. 133; Provision Co. v. Daves, 190 N.C. 7, 128 S.E. 593; Meadorv. Thomas, 205 N.C. 142, 170 S.E. 110.
However, any power not legislative in character which the Legislature may exercise, it may delegate. While the Legislature may not delegate the exercise of its discretion as to what the law shall be, it may confer discretion in the administration of the law. 16 C.J.S., p. 339, sec. 133;Provision Co. v. Daves, supra.
The authority to make rules and regulations to carry out an express legislative purpose or to effect the operation and enforcement of a law is not an exclusively legislative power, but is rather administrative in its nature and may be delegated. An administrative commission, within definite valid limits, may be authorized to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. So long as a policy is laid down and a standard is established by a statute, no unconstitutional delegation of legislative power is involved in leaving to selected instrumentalities both the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply. 11 Am. Jur., p. 955, etseq.; 11 Am. Jur., p. 960, sec. 242. However, boards and commissions of this character having authority to adopt rules and regulations do not exercise any of the powers delegated to the Legislature. They do not make laws. 11 Am. Jur., 961, sec. 242. However, boards and commissions of this character having authority to adopt rules and regulations do not exercise any of the powers delegated to the Legislature. They do not make laws. 11 Am. Jur., 961, sec. 242; Provision Co. v. Daves, supra, and cases cited.
The authority granted is to "fill in the details" in respect to procedural and administrative matters. Such board may not adopt a rule under such delegated authority which has the effect of substantive law. Neither urgency of necessity nor gravity of situation arising from economic or social condition allows the Legislature to abdicate, transfer or to *Page 21 
delegate its constitutional authority or duty to another branch of government. Holgate Bros. Co. v. Bashoe, 331 Pas., 255, 200 A. 672, 117 A.L.R., 639.
Thus it appears that the quoted rule adopted by the Industrial Commission under the provisions of ch. 120, sec. 54, Public Laws 1929, authorizing the Commission to make rules, not inconsistent with the act, for carrying out the provisions of the act and providing that processes and procedure under the act shall be as summary and simple as reasonably may be, must be held to relate to administrative and procedural matters and cannot be given the force and effect of law within the rule that general laws of a state enter into and form a part of a contract. Provision Co. v.Daves, supra; Kildow v. Industrial Comr., 192 N.E. 873 (Ohio); Bailey v.Indemnity Ins. Co., 145 S.W.2d 798.
The only case directly in point we have found is that of Zurich GeneralAccident L. Ins. Co. v. Industrial Comr., 325 Ill. 452, 156 N.E. 307. In that case it is made to appear that the Industrial Commission of the State of Illinois under authority of the provision in the statute creating the Commission which vested the Commission with power to adopt rules "for carrying out the duties imposed" adopted a rule as follows: "No insurance policy shall be terminated either by cancellation or expiration without ten (10) days' notice being given to the Commission and the liability of the insurer thereunder shall not cease until the expiration of such ten (10) days." In discussing the subject it is there said: "The power conferred is not general in its scope but is limited to the making of rules for the performance of the duties imposed upon the Commission by law. Such rules necessarily relate to matters of procedure. The act itself prescribes the conditions under which the compensation shall be paid. Rule 28 required 10 days notice of the termination of liability upon an insurance policy. Liability upon such a policy may have ceased to exist at the time notice to the effect was given, yet the rule extends that liability for an additional period of 10 days. The rule is not confined to the matter of procedure, but exceeds the authority conferred upon the Commission and creates a liability on the part of the insurer where none may exist in fact. The Commission cannot create a liability where the law creates none. Morris Co. v.Industrial Comr., 295 Ill. 49, 128 N.E. 727. It was not intended to extend the substantive provisions of the Workmen's Compensation Act by rules which the Commission might adopt, nor could such provisions be so extended. The power to enact laws is vested in the General Assembly and is a sovereign power, requiring the exercise of judgment and discretion, and cannot be delegated. 1 Lewis' Sutherland on Stat. Const. 2d, sec. 89; Cooley's Const. Lim. (7d), p. 163." *Page 22 
 Bethlehem Shipbuilding Corp. v. Mullens, 119 A. 314 (Del.), is not authoritative. There the Court was considering a rule which required the notice of injury to be in writing. This rule was adopted under statutory authority and the requirement of notice is stipulated in the statute. The rule merely prescribes the form of the notice and is in accord with other provisions of the statute requiring written notice. Nor is the statement in 71 C. J., 914, quoted in the appellee's brief, in point. There the text writer is discussing the right of cancellation and the duty to give notice to the Commission in jurisdictions in which the compensation act itself provides a method for cancellation of Workmen's Compensation insurance.
The North Carolina Rating Bureau is an organization or association of insurance companies. It is not a State agency. Even if it has a rule requiring notice to it of the cancellation of a policy, such rule has no bearing on the questions here presented. A failure to notify this bureau of the cancellation does not have the effect of continuing the policy in force beyond the 10 days after notice to the insured.
Technically, the contract of insurance is between the employer and the insurance carrier. However, the policy is issued for the protection of the employee and it is the duty of the Industrial Commission to have the employer provide adequate security for the payment of awards. It is, therefore, of vital concern, both to the Industrial Commission and to the employee, that the Industrial Commission be advised of the cancellation of a policy issued pursuant to the terms of this statute. The need for a statutory requirement of such notice as a condition precedent to cancellation may well merit the attention of the Legislature.
For the reasons herein pointed out it was error for the court below to affirm the conclusions of the Industrial Commission in the respects indicated. The policy issued by the defendant Indemnity Corporation was duly canceled prior to the date of the injury sustained by the plaintiff. It is not liable for the payment of the award made.
Reversed.